Welcome to the last day of our panel hearing in Atlanta. Judge Prior, Judge Kidd, and I are very happy to be here. You know the lighting system, I hope. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, then you'll be on our time and not yours. One word for the attorneys, I am usually pretty generous with the clock, but not today because Judge Kidd and I have to brave the lines at Hartsfield to get back home, and we have no idea what that's going to be like. So I'm going to try to keep everybody on a relatively tight leash today, so please stick to the clock if you can. With that, we're ready for our first Ms. Barron. Ms. Barron, we know you're court-appointed for Mr. Johnson. We want to thank you for your service, not only to him, but to us. We really do appreciate it. It is my honor. Thank you. Presiding Judge Jordan, Judge Prior, Judge Kidd, my name is Lindsay Barron and it is my privilege to represent Perry Johnson, who is serving a mandatory life sentence for his role in a bank robbery that involved the detonation of pipe bombs. When the man whose idea it was to detonate those pipe bombs has been out of prison for over 12 years. This case asks you to decide whether U.S. Sentencing Guideline 1B1.13B6, which authorizes a reduction for unusually long sentences, whether the district court was prohibited from considering sentencing disparities created by prospective changes in law as one among many factors, and deciding whether that defendant has shown extraordinary and compelling reasons why he should be granted compassionate release. I don't want to interrupt your argument, but at some point I would like you to address the district court's dangerousness finding. And it may make sense to do that first. However you want. I just want to hear from you on that point. Sure. I'll do that first because the law is very clear that if the district court did not abuse its discretion on that, you don't have to reach the harder question of law. So the district court found that Mr. Johnson presents currently a potential for danger to the community and it based its decision on one fact and one fact alone. And that was the fact that he participated in this incredibly violent World War II bank robberies about 23 years ago. One bank robbery involved a gun that was discharged. The second bank robbery involved two guns. Each defendant had a gun and the detonation of several pipe bombs. And so the district court spends about two pages of its order going through how violent that was. And on its own, that might be enough to support its finding of dangerousness. But here's the problem. The district court in sentencing Mr. Johnson's co-defendant, Eddie Butler Cavanaugh, necessarily had to look at that same conduct and consider the nature and seriousness and circumstances of that conduct in sentencing Mr. Cavanaugh. Mr. Cavanaugh was sentenced to 11 years in prison. So we know that the district... But he didn't have the same... In terms of relevant conduct, what they did was largely the same and he may have been more culpable in some ways than Mr. Johnson, but he ended up not pleading to the same charges, right? Absolutely. So there was different statutory exposure for Mr. Johnson than there was for his co-defendant. Correct. For example, count five, which was the pipe bomb count, that was dropped. And that's the one that led to the life sentence. It is. It is for Mr. Cavanaugh. He also, rather than being charged with the 10-year minimum for discharge of a firearm, he was charged with the five-year, or he was allowed to plead down as part of that charge bargain. So I understand that there are going to be disparate sentences there because one pled and cooperated and one didn't. But that doesn't get to the real question, which is, what is the dangerousness? Because the dangerousness should exist... That should be the same for both of them. They committed the same conduct. And the district court necessarily would have had to find, because remember, even though Mr. Cavanaugh agreed to a charge bargain, he still faced up to life imprisonment for that 924C count and up to 25 years for that Hobbs Act robbery. So he could have been sentenced to a lot more than 11 years. But the district court would have had to find, under 3553A, that 11 years was an appropriate sentence, even after considering the nature and circumstances of the offense. As I understand it, one of your arguments is that the district court should have taken into account Mr. Johnson's current medical condition. What's your best authority for that proposition? Well, so the district court, in making that dangerousness calculation, is required under the sentencing guidelines. It directs the court to look at the factors that it would consider under the Bail Reform Act in deciding whether to grant someone bond. And one of the factors there that the court is supposed to consider are the personal characteristics and history of the defendant. And so medical circumstance can be one of those personal factors that you can consider. It can be, but does it have to be? It does not have to be. And a district court has great discretion in balancing these things, but the district court here was very clear that its reason was this past conduct. And I'm not going to say that it is inappropriate to look at that. It absolutely can be. But when that is the only factor that the court relies on, and we know that the court would have necessarily had to conclude that that exact same conduct when committed by someone else was not sufficient to justify more than 11 years, it seems a bit disingenuous to say that now, 23 years after the conduct, when this man has had absolutely no history of violence while in prison, that he remains a danger. There has to be something more to justify why he still needs to die in prison. But it can't be a categorical rule, right? Because there are, I would think that there are some crimes which a person can't outrun regardless of time spent in prison. So if you were a person who had killed five bank employees during a bank robbery and got a life sentence, it's hard to run away from the violence and dangerousness attributed to that conduct, even if you had spent 15 years violation-free in prison, right? That could definitely be the case. And if the district court had said that, that this is the kind of sentence you can't outrun, maybe we're in a different circumstance. But even if the court had said that, we know the court doesn't actually believe that because it allowed Mr. Kavanaugh to outrun the exact same crime. When it was Mr. Kavanaugh who decided let's use these pipe bombs, it was his idea, the transcript from the trial that was submitted by the government earlier this week. Mr. Kavanaugh testified at trial, it was my idea to create that diversion. So he's the one that creates this incredibly dangerous situation and the court decides that he can outrun it. But my client can't. I want to let you get to the other issues too because you have limited time. So thank you for addressing that issue. You're welcome, Your Honor. So the question here, the government argues and the district court found that it was prohibited from considering the First Step Act because that would basically underwind Congress's desire not to apply that relief retroactively. The logic there is that because Congress decided not to automatically grant relief to everyone, that Congress must have necessarily decided that it shouldn't allow relief for anyone. And so under this court's precedent, under U.S. v. Bryant which is cited I think by everyone including the judge in this case, in U.S. v. Bryant this court relied on Scalia and Garner basic statutory construction to ask the question, is there a way to read what appear to be competing provisions of law in a way that is harmonious? And here there is. The First Step Act does not have any statement that Congress intended to undermine 3582 and that a court could never consider a non-retroactive change in law when deciding among many other factors whether to grant relief. There's nothing in the First Step Act that supports that reading. And in fact, in the same legislation, the First Step Act, Congress actually considered changes to 3582. It could have corrected 3582's ability to allow judges to undermine the will of Congress in other ways. Here's an example. Consider mandatory minimums. In Bryant, this court acknowledged that people who were subject to mandatory minimums can get relief under compassionate release. Well, Congress could have corrected that and said, you know what, that undermines our will because when we say we want an armed career criminal to serve 15 years, we mean it. And we don't want courts to have that discretion. It chose not to do that. And as this court said in Bryant, we presume that congressional inaction, and this is talking about 3582, is intentional. If Congress had wanted to prevent judges from having this discretion, it would have said so. But 3582 designates to the Sentencing Commission the authority to decide what these factors are. 994T is an express delegation to the Sentencing Commission to decide what is an extraordinary and compelling circumstance. The only limit Congress has ever placed on that authority is that a district judge cannot rely on rehabilitation alone. Other than that, it can consider a host of factors. And so it is simply not true to say, I mean, I agree that changes in law are not extraordinary in and of themselves. The question is, can they become extraordinary when that change creates a gross disparity between what that person faces today and what they would have faced then? The district court here said yes. The district court also said that this is an unusually long sentence, that he has served 10 years or more. So he qualifies, but for the district court's decision that it was prohibited from even considering that change of law. And there's absolutely nothing that stops the Sentencing Commission from issuing the exact guidance it did. It was an authorized and appropriate use of their expressly delegated authority under 994T. I see that my time is up, so I will reserve the balance of my time for rebuttal. Thank you very much. Thank you. Ms. Tiffin. Good morning, and may it please the Court. Dawn Tiffin, representing the United States of America. I'll take as little time as possible, Your Honor. I am also going to be in the TSA line. We're not rushing anybody. We're just going to keep normal time. Okay. I want to start with addressing the dangerousness finding. It would be our position that Mr. Kavanaugh's sentence in no way impacts the district court's analysis of whether Mr. Johnson would be a danger to the community if he were granted a sentence reduction. That is what the late Justice Scalia might call argle-bargle. It's distraction. It's noise. It doesn't matter here. The district court had before it an analysis of whether Mr. Johnson would pose a danger to the community if he was eligible for compassionate release and if the court granted that relief. You think it's not entitled to wait, or you think it's completely irrelevant? I would say it's completely irrelevant because the compassionate release process is an individualized assessment of a single defendant. So there are many things that the court can and does consider within the parameters of 1B1.13. The district courts have a lot of discretion to consider many things, but whether a co-defendant who was sentenced 20 years before to a much lesser sentence for having chosen to plea, again, is a red herring here. I think there are circumstances where a district court could consider conduct of a defendant, of a co-defendant, excuse me, and how the interplay between the relevant conduct of one versus the other, this case doesn't present that scenario. Again, as Judge Jordan, you've already pointed out, Mr. Kavanaugh chose a completely different path. He cooperated. He pled. And from that point on, the paths were going to be greatly divergent. And also, Mr. Johnson, his focus in this request for compassionate release was the 403B scenario, which is, of course, an issue that the Supreme Court will be ruling on maybe any day now. I'm happy to answer questions on that. But as to the dangerousness finding, this is really a textbook use of the court's discretion in finding that Mr. Johnson's behavior was so, by his own admission, reckless, negligent, wanton, and even stupid, as he describes it, that that was a reason to find he would pose a danger to the community if he was eligible for compassionate release, which, of course, he was not because the district court found that under B-6 and even B-1, that he had not established an extraordinary and compelling reason to establish his eligibility for compassionate release. What do you believe the standard of review is to look at a district court's dangerousness finding in these circumstances? I believe it would be an abuse of discretion. Okay. Respond, if you could, to your colleague's argument that dangerousness is necessarily impacted one way or another by passage of time. And the fact that someone may have been dangerous at point A doesn't mean that he or she is dangerous 20 years after the fact. Well, that could be the case. And that's always the district court's discretion to find whether that is true in the case before it or whether it is not true. And again, it's part and parcel of the individualized analysis on a case-by-case basis. So certainly, certainly there would be a case, and there have been cases, where a judge has been within its discretion to find that a specific defendant requesting relief has rehabilitated himself or herself. It could be through a lack of incidents on their prison record. It could be the cumulative effect of education. A lot of defendants will promote the classes that they've completed, trades that they've learned, and so on and so forth. There are so many things that can feed into that. It would simply be impossible to take a categorical view on it that a passage of time, whether it is 10 years, whether it is 20, whatever it may be, would equate to a defendant being generally or specifically less dangerous to the community if the court were to grant relief. Section 3142G requires the district court to take account of all the available information concerning the factors. Did the district court do that here, and how do we know? Absolutely. Well, this was a pretty thorough order, and it addressed all of the things that Mr. Johnson raised, which was not just the disparity created by 403B, but also his purported medical conditions, his purported rehabilitation, and even his release plan. So the district court in varying ways addressed each one of those things. It even went further and addressed the medical concerns, if you will, of Mr. Johnson under 1B1.13B1, the medical circumstances, which gave Mr. Johnson an additional avenue to establish an extraordinary and compelling reason. But the district court considered the medical condition only with respect to whether there was an extraordinary and compelling reason, didn't it? I don't believe so. Not as a part of the dangerousness analysis. Am I wrong about that? I would have to respectfully disagree with the court. I understand how the order was delineated and that the court expressed review of the medical circumstances under B1, but that was also implicit in the dangerousness finding. Well, but for the extraordinary and compelling reason, there's specific criteria to be considered, but that's not so under 3142G, is it? No, but here we have a lot of overlap in the district court's order. And again, the defendant here, Mr. Johnson, presented myriad evidence of things that he believed would support eligibility and relief here. It included all of the things we've already talked about, the medical circumstances, the rehabilitation, the release plan, and the gross disparity that Mr. Johnson alleged had been created by this change in law. So that was implicit in the district court's finding that under B6 or B1, whichever, as well as the dangerousness finding, the district court here is checking some boxes. It's going through and it's saying, yes, we have this, yes, we have this, or no, we don't have this. And even at one point, we don't have this, but I'm still going to look at this. So the district court hit all of these and addressed everything and more than Mr. Johnson asked it to. Could you address Mr. Johnson's contention that he is eligible, notwithstanding the non-retroactive nature of some of the sentencing changes that Congress has brought about? Yes, and as the district court found, he's simply incorrect about that. He has, as was pointed out in both the order and the United That's without the stacking, but that's also without the sentences on the remaining counts. We're talking strictly about the mandatory counts that were stacked so that he got that life sentence back in, I believe it was 2003 or 2004. Do you happen to recall what his guideline range was way back when? In other words, did the district court stack to reach a guideline sentence or stack of its own discretion to impose a sentence it thought was reasonable and necessary under Section 3553? So, both, Your Honor, in the sense that after the mandatory minimums were applied, the district court still had to sentence Mr. Johnson on a remaining count and sentenced him for, and I'm sorry I don't have the count in my head right now, but a counsel for Mr. Johnson did request that the district court would sentence below, even though it had no meaningful impact due to the stacks and the life sentence, ask the court to sentence below the top of the guideline range and the court here declined to do that and still sentenced Mr. Johnson to the top of the guidelines for that count. Okay, thank you. I'm happy to answer any additional questions that the court may have. Okay, well, I would ask the court. I don't think we have any more. Okay, thank you. Thank you for the court's time, and I would ask to affirm the district court's order. Thank you. All right, thank you very much. Thank you. Addressing the dangerousness issue first, the government wants to treat that as a distraction, the comparison between Mr. Kavanaugh and Mr. Johnson as a distraction, but here's what the district court would have had to have said. This conduct, and remember the conduct of 23 years ago, that is the only reason the court found he is in an ongoing danger, so the court would have had to say that that conduct was so egregious this man needs to die in prison. There is no way to reconcile that with the fact that the court looked at the same conduct and gave Mr. Kavanaugh a sentence of 51 months plus 60, so for a total of about 11 years. You cannot reconcile those two findings, so it is just simply not a distraction. It tells us what the district court would have had to have found about how dangerous this conduct is. How much do you, I'll ask you the same similar question that I asked Ms. Tiffin, and you may not be able to answer it either because it's going back into the old record. Do you know what his, Mr. Kavanaugh's guideline range was? I don't, Your Honor. I know that he got 51 months for the Hobbs Act count. I don't know if that was above or below, so there's not very much on PACER. All I have is the JNC for him that says 51 plus 60, and so he got 51 on the Hobbs Act. My client got 135 months on the Hobbs Act, so he's not going to get that three levels for acceptance. I don't have Mr. Kavanaugh's PSR, so I don't know how that worked out, but it is also, it is, the government says, well, he cooperated, so he's going to get a different sentence. I understand that, Your Honor, but that's a red herring. The question is, is he dangerous? And the fact that Mr. Kavanaugh entered into a charge bargain, he should get a lighter sentence for that. I totally agree, but that doesn't, that's not, doesn't inform the question of whether my client remains dangerous, and so again, I go back to the fact that literally the only thing the district court pointed to was how serious that conduct was. When we know that when he sentenced both of these defendants on the exact same day, May 4, 2004, sentenced them on the same day, came to two wildly different conclusions about how dangerous and serious that conduct was, and you just can't reconcile those two findings. Do you agree with the government that dangerousness is reviewed for abuse of discretion, or do you think it's some other standard of review? I would have said clear error because there's a, there's a factual finding there, and the court has to make a finding about whether he's dangerous, so I know that that is not helpful to me, but I thought that those kind of findings were reviewed for clear error, and it is clearly erroneous when the court relies on two, on this one fact that is inconsistent with what the court necessarily would have had to find earlier in time, and so I think it does satisfy the clear error standard. Right, but on the other hand, I mean, danger to the community is only one of the 3553 factors and can sometimes be overcome by the others, too, so it's not a one-to-one correspondence. That's correct, Your Honor. Dangerousness to the community, it's actually a separate factor aside from 3553a under 1B1.3, 1B1.113. Dangerousness to the community, as analyzed under the Bail Reform Act, is a separate consideration than 3553a. It all kind of melds together. The district court never even reached 3553a, even though it spent two and a half pages of its order literally just cutting and pasting the statute. Never got there, so we don't ever get into 3553a. The district court did consider Mr. Johnson's family ties and mentioned his mitigating prison history. Why isn't that enough under the standard? Why is that not enough? Why isn't that enough here? To balance against dangerousness? Well, so I have to concede that the district court has wide discretion to decide how to balance those factors, and my argument is not that the district court balanced them improperly, that it should have given more weight to the medical issues or the family connections. I lose if that's my argument. My argument is the only factor it considered was this old conduct that we know it had made an inconsistent finding with on related to a different person who did the exact same conduct. Would have had to have considered under 3553a the dangerousness of that exact same conduct and sentenced him to way below what the court could have. I'd like to, with my 30 seconds left, address the non-retroactivity. The government says that he would still be sentenced to a minimum of 40 years, and I just want to point out that we don't necessarily know what his sentence would be. Since he was sentenced, the Supreme Court handed down the Dean decision, which allows a court to consider when it's deciding under the guidelines what a reasonable sentence is. It's allowed to consider mandatory minimums that stack, so it could be lower. It doesn't necessarily have to stack, and we also have to consider concepcion, in which even in post-conviction litigation, a court is allowed to consider a host of factors, so we don't know what sentence he would get today. We know the district court found there was a gross disparity here, and we know that nothing in the First Step Act prevents the the sentencing commission from exercising its authority to say that a compelling and extraordinary circumstance can be a retroactive change in law, that creates that disparity. So in keeping with the goal of 3582, which is to balance finality with the need to avoid unwarranted sentencing disparities, I ask this court to reverse and remand. Thank you both very much. Thank you. Good luck catching your flights. Thanks.  All right, our next case.